# No. 16-3820

UNITED STATES COURT OF APPEALS

FOR THE THIRD CIRCUIT

UNITED STATES OF AMERICA,

*Appellee,*

v.

COREY GRANT,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY (No. 2:90-cr-00328-JLL)

**RESPONSE OF DEFENDANT-APPELLANT COREY GRANT TO THE PETITION OF THE UNITED STATES FOR REHEARING *EN BANC***

> **Lawrence S. Lustberg**
> **Avram D. Frey**
> **GIBBONS P.C.**
> **One Gateway Center**
> **Newark, NJ 07102**
> **(973) 596-4500**
>
> *Attorneys for Defendant-Appellant*

## **TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES .................................................................................. ii

INTRODUCTION .....................................................................................................1

BACKGROUND .......................................................................................................3

ARGUMENT .............................................................................................................8

    I.     The Panel Correctly Held that *De Facto* LWOP Is Unconstitutional for Juveniles Who Are Not Incorrigible. ....................8

    II.    The Panel Was Correct that Juveniles Who Are Not Incorrigible Must Have a Chance for Fulfillment Outside Prison Walls. ................9

    III.   The Panel Appropriately Established a Framework for Implementing Its Holdings to Guide the Lower Courts. ...................13

CONCLUSION ........................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Atkins v. Virginia*,
    536 U.S. 304 (2002)..................................................................................13

*Bd. of Pardons v. Allen*,
    482 U.S. 369 (1987)..................................................................................10

*Graham v. Florida*,
    560 U.S. 48 (2010).............................................................................*passim*

*Grant v. United States*,
    No. 12-6844, 2014 WL 5843847 (D.N.J. Nov. 12, 2014)..................................3

*Greenholtz v. Inmates of Nebraska Penal Complex*,
    442 U.S. 1 (1979)......................................................................................10

*Miller v. Alabama*,
    560 U.S. 227 (2012)..........................................................................*passim*

*Montgomery v. Louisiana*,
    136 S.Ct. 718 (2016)..........................................................................*passim*

*In re Pendleton*,
    732 F.3d 280 (3d Cir. 2013) .........................................................................4

*Planned Parenthood v. Casey*,
    505 U.S. 833 (1992)..................................................................................14

*Ricks v. Shover*,
    891 F.3d 468 (3d Cir. 2018) .........................................................................9

*Roman v. Jeffes*,
    904 F.2d 192 (3d Cir. 1990) .........................................................................9

*Roper v. Simmons*,
    543 U.S. 551 (2005)...............................................................................4, 14

*United States v. Grant*,
    887 F.3d 131 (3d Cir. 2018) ................................................................*passim*

*United States v. Mathurin*,
    868 F.3d 921 (11th Cir. 2017) ...................................................................8

*Virginia v. LeBlanc*,
    137 S.Ct. 1726 (2017) ...........................................................................10

**Statutes**

18 U.S.C. § 924(c) ..........................................................................................3

18 U.S.C. § 1962(c) ........................................................................................3

18 U.S.C. § 1962(d) ........................................................................................3

18 U.S.C. § 3553(a) ...........................................................................7, 14, 15

18 U.S.C. § 3582(c)(1)(A) ........................................................................10, 11

21 U.S.C. § 841(a)(1) .....................................................................................3

21 U.S.C. § 846 ..............................................................................................3

28 U.S.C. § 2254(d)(1) .................................................................................10

Pub. L. No. 98-473, § 224 (1984) .................................................................13

**Other Authorities**

Assoc. Press, "A State-by-State Look at Juvenile Life without Parole,"
    Seattle Times (July 30, 2017) ................................................................15

"Life Sentences in the Federal System," Report, U.S. Sentencing
    Comm'n. (Feb. 2015) .............................................................................12

**Rules**

Fed. R. App. P. 35(a) .....................................................................................2

# INTRODUCTION

In *Miller v. Alabama*, 560 U.S. 227 (2012), the Supreme Court held that a juvenile homicide offender who is capable of reform may not be sentenced to life without parole ("LWOP"). But *Miller* left open the questions of whether a term-of-years sentence that either exceeds or approaches life expectancy might be prohibited. The present appeal raised these issues because the district court found Grant capable of reform yet imposed a term of 65 years. As Grant has argued, this sentence—which would have resulted in his release no earlier than at age 72—violated the Eighth Amendment either because Grant would die in prison, or because the scant time he might survive after his sentence posed a distinct constitutional violation by denying him an opportunity for "fulfillment outside prison walls," *Graham v. Florida*, 560 U.S. 48, 79 (2010).

In addressing these issues, the panel properly held Grant's sentence unconstitutional whether or not it exceeds his life expectancy. Thus, the panel held that the principles underlying the Supreme Court's decision in *Miller* permit of no distinction between formal LWOP and terms of years that amount to the same thing ("*de facto* LWOP"). Further, "look[ing] to the Supreme Court's original diagnosis of the constitutional infirmity that plagues juvenile LWOP," *United States v. Grant*, 887 F.3d 131, 147 (3d Cir. 2018), the panel recognized that juvenile offenders who are capable of reform must be afforded an opportunity for

"'fulfillment outside prison walls,'" *Grant*, 887 F.3d at 147 (quoting *Graham*, 560 U.S. at 79), and therefore that a term-of-years sentence falling just short of life expectancy also violates the Eighth Amendment. Finally, the panel provided guidance to the lower courts in effectuating these mandates, adopting a procedure and a presumptive upper limit (albeit one that is rebuttable) for sentencing juvenile offenders who are capable of reform. The panel accordingly vacated and remanded for the district court to determine Grant's life expectancy and impose a sentence that will permit a chance for fulfillment outside prison.

The government argues in its petition that the panel decided constitutional issues "unnecessarily" because, according to the government's calculation, Grant will outlive his sentence by "'some years,'" which is all the law requires. Gov't Pet. at 12-13 (quoting *Montgomery v. Louisiana*, 136 S.Ct. 718, 732-33 (2016)). Thus the government asks this Court to rehear this appeal *en banc* so that it may determine Grant's life expectancy in the first instance, conclude that Grant will survive his sentence, and "reinstate Grant's richly deserved collective sentence." Gov't. Pet. at 3. But this type of factual analysis is not an appropriate basis for rehearing. Fed. R. App. P. 35(a). Instead, as the panel correctly determined, Grant's life expectancy is a factual determination to be made on remand. Accordingly, the panel remanded for a resentencing consistent with its decision, providing an administrable standard designed to guide the district court (and lower

courts generally) and render meaningful the Supreme Court jurisprudence upon which it relied—exactly as Court of Appeals should do. Accordingly, the government's petition should be denied.[1]

## BACKGROUND

In 1992, Grant was convicted of RICO conspiracy, 18 U.S.C. § 1962(d); racketeering, including murder and attempted murder, 18 U.S.C. § 1962(c); conspiracy to possess with the intent to distribute cocaine, 21 U.S.C. § 846; two counts of possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1); and possession of a weapon in relation to a crime of violence or drug trafficking, 18 U.S.C. § 924(c), all for offenses committed between the ages of 13 and 16. The district court sentenced Grant to life on the RICO conspiracy and racketeering counts under the then-mandatory Sentencing Guidelines, and imposed a term of 40 years to run concurrently on each of the drug counts (along with a five-year consecutive sentence under § 924(c)). *Grant*, 887 F.3d at 135-36.

Following the Supreme Court's decision in *Miller*, Grant moved for and won a new sentencing hearing, *Grant v. United States*, No. 12-6844, 2014 WL

---

[1] Grant would note that he has filed his own petition for rehearing or rehearing *en banc* with regard to a distinct issue—the panel's divided decision denying Grant's claim that he was entitled to be resentenced on all counts under the "sentencing package doctrine" as well as *Miller* and its progeny. Def. Pet. for Rehearing or Rehearing *En Banc* at 8-15. Accordingly, and in the alternative, if this Court determines to rehear the matter, it should rehear the entire appeal.

5843847, at *2-4 (D.N.J. Nov. 12, 2014),[2] where the district court found Grant "not that rarest of exception referenced in *Miller*, where the lifetime without parole is appropriate." A151. Nevertheless, the court imposed 60-year terms on the RICO conspiracy and racketeering counts, resulting in a 65-year aggregate sentence.[3] On appeal, noting that with good time credit he would be released at 72, Grant argued that the district court had determined him capable of reform and yet imposed a sentence that was either *de facto* LWOP or a denial of any opportunity for "fulfillment outside prison walls,"—either of which violates the Eighth Amendment. Def. Br. at 21-31 (quoting *Graham*, 560 U.S. at 72-73, 79).

The panel appropriately reviewed the relevant jurisprudence, noting the significant ways in which juveniles are different from adults, *Grant*, 887 F.3d at 138 (quoting *Roper v. Simmons*, 543 U.S. 551, 569-70 (2005)), and recognizing that these differences mean that the harshest punishments cannot be justified for juveniles under the traditional penological rationales of retribution, deterrence, incapacitation, and rehabilitation, *id.* at 138-40 (citing *Roper*, 543 U.S. at 571, 578; *Graham*, 560 U.S. at 71-74). The panel observed that, following *Graham*, LWOP is an especially harsh punishment because it "'gives no chance for fulfillment

---

[2] Grant's habeas petition seeking this relief was specifically authorized by this Court. *See In re Pendleton*, 732 F.3d 280 (3d Cir. 2013).
[3] Though counsel argued that the 40-year terms for drugs were "all part and parcel of one sentence," A40, "the District Court limited the scope of its review to the RICO conspiracy and racketeering counts," *Grant*, 887 F.3d at 136.

4

outside prison walls, no chance for reconciliation with society, [and] no hope,'" and is particularly harsh for a juvenile who "'will on average serve more years and a greater percentage of his life in prison than an adult offender [given the same sentence].'" *Id.* at 139 (quoting *Graham*, 560 U.S. at 70, 79). Thus, the panel noted, *Miller* held that a juvenile homicide offender cannot be sentenced to LWOP except in the rare case in which he is determined incorrigible after consideration of his youth and attendant circumstances. *Id.* at 140-41 (citing *Miller*, 567 U.S. at 479-80). Juvenile offenders who cannot be sentenced to LWOP, the panel observed, must therefore be sentenced to a term that provides a "'meaningful opportunity to obtain release.'" *Id.* at 140 (quoting *Graham*, 560 U.S. at 75).

The panel then addressed Grant's specific claims. To begin, the panel held that *de facto* LWOP for a juvenile offender who is not incorrigible violates the Eighth Amendment for three reasons. First:

> A sentence for a juvenile offender who is not incorrigible but that still results in him spending the rest of his life in prison does not appreciate the categorical differences between children and adults and between children who are incorrigible and those that [are not].

*Grant*, 887 F.3d at 142-43 (citing *Miller*, 567 U.S. at 471). Second, "the Supreme Court's concerns about the diminished penological justifications for LWOP sentences for juvenile offenders apply with equal strength to *de facto* LWOP sentences." *Id.* at 142, 144 (citing *Miller*, 567 U.S. at 472; *Montgomery*, 136 S.Ct.

5

at 734). And third, "*de facto* LWOP is irreconcilable with *Graham* and *Miller's* mandate that sentencing judges must provide non-incorrigible juvenile offenders with a 'meaningful opportunity to obtain release[.]'" *Id.* at 142 (citations omitted).

Next, the panel separately considered whether a juvenile who is capable of reform may be sentenced to a term that permits release only shortly before death. Examining "the Supreme Court's original diagnosis of the constitutional infirmity that plagues juvenile LWOP," as stated in *Graham*, the panel correctly concluded that:

> [A] non-incorrigible juvenile offender must be afforded an opportunity for release at a point in his or her life that still affords "fulfillment outside prison walls," "reconciliation with society," "hope," and "the opportunity to achieve maturity of judgment and self-recognition of human worth and potential." That is, the mandate encompasses more than mere physical release at a point just before a juvenile offender's life is expected to end.

*Grant*, 887 F.3d at 147 (quoting *Graham*, 560 U.S. at 79).

Finally, the panel delineated "a sentencing process that effectuates both our holding[s]," noting the need to "provid[e] principled guidance to lower courts[.]" *Grant*, 887 F.3d at 148-49. Thus, the panel held, courts must hold "an individualized evidentiary hearing" and make "a factual determination of the juvenile offender's life expectancy." *Id.* at 149. The panel cautioned against exclusive reliance on actuarial tables, however, as such tables may discriminate

based upon race and gender, raising constitutional issues; instead, the panel directed lower courts to consider "any evidence . . . that bears on the offender's mortality." *Id*. at 149-50.

"[T]he next step," the panel held, "is for a sentencing court to shape a sentence that properly accounts for a meaningful opportunity" for "'fulfillment outside prison walls[.]'" *Id.* (quoting *Graham*, 560 U.S. at 79). Noting that no particular age necessarily demarcates when a juvenile offender will "still [be] able to meaningfully reenter society," the panel identified the national age of retirement as an "inflection point" at which an "opportunity . . . to attend to other endeavors in life" yet remains. *Id.* at 150. Accordingly, the panel held, courts should consider the national retirement age as "a sentencing factor, in addition to life expectancy and the § 3553(a) factors," and should presumptively impose a sentence that permits release before retirement age, though they retain discretion to do otherwise "in exceptional circumstances." *Id.* at 151-52. Having thus provided an administrable standard to effectuate the Supreme Court's holdings in the case of juveniles who are capable of reform, the panel vacated Grant's 65-year term and remanded for resentencing.

# **ARGUMENT**

I. **The Panel Correctly Held that *De Facto* LWOP Is Unconstitutional for Juveniles Who Are Not Incorrigible.**

The government concedes that the Eighth Amendment forbids *de facto* LWOP for a juvenile like Grant who is capable of reform. Gov't. Pet. at 10 n.3; *Grant*, 887 F.3d at 142 n.8. Nonetheless, the government claims the panel should not have decided this issue, since, according to the government's preferred actuarial table, Grant will likely survive his sentence by 4.7 years. Gov't. Pet. at 9-10. The government ignores, however, that as the panel correctly held, life expectancy is "a factual determination" to be made after "an individualized evidentiary hearing" that accounts for "any evidence . . . that bears on the offender's mortality" so as "to avoid the [] constitutional problems" attendant to exclusive reliance on actuarial tables. *Grant*, 887 F.3d at 149 (citing *United States v. Mathurin*, 868 F.3d 921, 932 (11th Cir. 2017)); *see Mathurin*, 868 F.3d at 932 (exclusive reliance on actuarial tables would ignore "social, economic, medical, and cultural factors," and would suggest that "Hispanics should receive longer sentences . . . solely because they generally live longer"). Indeed, the government argued *against* exclusive reliance on actuarial tables before the panel. Gov't. R. 28(j) Letter (Oct. 10, 2017) ("*Mathurin* highlights the limits of using actuarial tables"); Gov't. Br. at 25-26 (calling it "improper[]" to ignore Grant's health).

Accordingly, it was entirely appropriate for the panel to remand for determination of Grant's life expectancy in the first instance.

Nor should the panel have remanded for re-sentencing without resolving whether the law proscribes *de facto* LWOP. To do so would have denied the district court (and other lower courts) any guidance as to how to consider Grant's life expectancy in imposing a constitutional sentence. *See, e.g., Ricks v. Shover*, 891 F.3d 468 (3d Cir. 2018) (remanding to permit re-pleading, but analyzing the pertinent Eighth Amendment standard because "it is within our purview to provide guidance"); *Roman v. Jeffes*, 904 F.2d 192, 196 (3d Cir. 1990) (reversing dismissal on procedural grounds, but analyzing constitutional issue "given the importance of guidance in this area and in the interest of judicial economy"). Thus, the panel properly and correctly held *Miller* applicable to de *facto* LWOP.

## II. The Panel Was Correct that Juveniles Who Are Not Incorrigible Must Have a Chance for Fulfillment Outside Prison Walls.

With regard to the panel's holding that Grant is entitled to "an opportunity for release at a point in his . . . life that still affords 'fulfillment outside prison walls,'" Grant, 887 F.3d at 147 (citation omitted), the government responds that Grant is entitled only to "'hope for some years of life outside of prison walls,'" Gov't Pet. at 12 (quoting *Montgomery*, 136 S.Ct. at 736-37). Grant's sentence provides this, the government insists, because he will survive his sentence (again,

9

according to actuarial tables) and because he might conceivably receive geriatric release under 18 U.S.C. § 3582(c)(1)(A). Gov't Pet. at 10-11.

The government's actuarial estimate is addressed above—in sum, the appropriate inquiry is one for remand and not for original determination by this Court. But the government's geriatric release argument is, as the panel correctly held, also unavailing. Thus, geriatric release cannot constitute the required "meaningful opportunity for release at a point . . . that still affords 'fulfillment outside prison walls'" because it is entirely discretionary with the Bureau of Prisons (BOP), does not guarantee consideration of youth, and is judicially unreviewable. *Grant*, 887 F.3d at 145 n.10 (citation omitted). The government counters that parole is also discretionary, and argues that a parole opportunity "categorically cures any Eighth Amendment defect." Gov't. Pet. at 11.[4] But while parole boards have discretion to grant or deny release, they *must consider* a timely application, *see Bd. of Pardons v. Allen*, 482 U.S. 369, 378-81 (1987) (mandatory language of parole statute creates liberty interest in parole) (citing *Greenholtz v. Inmates of Nebraska Penal Complex*, 442 U.S. 1 (1979)); by contrast, the BOP has complete discretion whether even to consider geriatric release, and there is no

---

[4]The government also cites *Virginia v. LeBlanc*, 137 S.Ct. 1726 (2017), but that decision held only that *Graham* did not "clearly establish[]," for purposes of AEDPA, 28 U.S.C. § 2254(d)(1), whether or not geriatric release constitutes a "meaningful opportunity." This matter, on direct appeal, looks to a different standard.

guarantee it will consider any particular evidence. *See* 18 U.S.C. § 3582(c)(1)(A) ("[T]he court, upon motion of the Director of the Bureau of Prisons, may reduce the term of imprisonment . . . ."). Geriatric release is thus not equivalent to parole for purposes of satisfying the dictates of *Miller* and *Montgomery*.

Nor does *Montgomery*'s reference to "some years outside of prison" answer the question that was put to, and addressed by, the panel regarding whether a juvenile capable of reform may be sentenced to a term that will result in his release within a few years of his life expectancy; to the contrary, *Montgomery*'s "some years" language begs the question of how many years would suffice. It was thus entirely appropriate for the panel, in the exercise of its traditional appellate function, to analyze this issue and provide guidance to the lower court on remand. And the panel analyzed the issue correctly, "look[ing] to . . . the constitutional infirmity that plagues juvenile LWOP," *Grant*, 887 F.3d at 147, to determine what sentences would pass muster.

The government complains that the panel misidentified the problem at issue, claiming LWOP is harsh only because it "offers 'no hope' and 'no chance' to 'leave prison before life's end.'" Gov't. Pet. at 8 (quoting *Graham*, 560 U.S. at 79). Thus, in the government's view, "sentences that end years before life expectancy— as Grant's does—are not . . . . 'especially harsh.'" *Id.* (citation omitted). But the government ignores the very language of *Graham* upon which the panel relied, that

11

LWOP may be unconstitutionally harsh precisely because it denies a "chance *for fulfillment* outside prison walls." *Graham*, 560 U.S. at 79 (emphasis added). Likewise, the claim that Grant's sentence is not "especially harsh"—though it would require him to serve 55 years, from age 17 to 72—ignores that, as the government concedes, Gov't. Pet. at 8, part of the infirmity of juvenile LWOP is that a juvenile "'will on average serve more years and a greater percentage of his life in prison than an adult offender,'" *Grant*, 887 F.3d at 139 (quoting *Graham*, 560 U.S. at 70, 79). Indeed, 55 years is more time than the average adult sentenced to LWOP will serve, given that the average age of individuals sentenced to LWOP or *de facto* LWOP is 37. *See* "Life Sentences in the Federal System," Report, U.S. Sentencing Comm'n., at 7, 11 (Feb. 2015) (2013 statistics).

The government argues, however, that the panel erred because "[t]he 'meaningful opportunity' in *Graham* was a 'means and a mechanism[]'" to demonstrate that a juvenile offense was the product of 'transient immaturity,'" and Grant received that at resentencing in the form of "a hearing where youth [was] considered." Gov't. Pet. at 9, 13-14 (citations omitted). It was thus wrong, the government says, for the panel to conclude that Grant was entitled to a sentence that "*guarantees* his release" at any point in time. *Id.* at 2 (emphasis in original). But a hearing where youth is considered is "a procedure through which [a juvenile offender] can show that he belongs to the protected class" for whom "the

12

Constitution prohibits a particular form of punishment[.]" *Montgomery*, 136 S.Ct. at 735 (calling a *Miller* hearing "a procedural requirement necessary to implement a substantive guarantee," and likening it to the procedure required by *Atkins v. Virginia*, 536 U.S. 304, 317 (2002) to determine whether a defendant is intellectually disabled and therefore ineligible for execution). Thus, once Grant was determined to be a member of the protected class (*i.e.* juvenile offenders who are not incorrigible), he obtained a substantive right to be ineligible for a particular punishment (*i.e.* a sentence that would deprive him of a meaningful opportunity for fulfilment outside of prison). And while it is true that *Graham* required an *opportunity* and not a *guarantee* of release, 560 U.S. at 75, the panel decision did not hold otherwise. Rather, given the fact that—unlike in the States—there is no parole in the federal system, *see* Pub. L. No. 98-473, § 224 (1984), the "meaningful opportunity" described in *Graham* could only be afforded at the time of sentencing in Grant's case, as the government has itself acknowledged. A488-89, 497 ("This Court is being asked to serve as a de facto Parole Commission."). Thus, the government's claims of error are unfounded, and rehearing is unwarranted.

### III. The Panel Appropriately Established a Framework for Implementing Its Holdings to Guide the Lower Courts.

Finally, the government attacks the panel's identification of the national age of retirement as the presumptive time by which juveniles who are not incorrigible

13

must receive an opportunity for release. According to the government, identification of retirement age was "arbitrary" and "for legislatures." Gov't. Pet. at 15-16. To the contrary, however, the panel did no more than set a rebuttable presumption, not a binding rule. And this was only one component of a thoughtful framework which also includes consideration of life expectancy, the factors set forth in 18 U.S.C. § 3553(a), and the need to provide a chance for "fulfillment outside prison" based on the particular facts. *Grant*, 887 F.3d at 151. Nor was the panel's line-drawing without logic—retirement is a late "transitional" point that "society accepts" as allowing an "opportunity . . . to attend to other endeavors in life," *id.* at 150; the panel's presumptive line thus permits long sentences while ensuring the requisite chance for "fulfillment outside prison[.]" *Id.* at 150. And while the panel was candid that there is no "precise line" marking "at what age [one is] still able to meaningfully reenter society," *id.*, that does not render its decision hopelessly arbitrary or legislative; indeed, such lines are regularly drawn by appellate courts to breathe meaning into constitutional guarantees and provide administrable standards for lower courts. *See, e.g.*, *Roper*, 543 U.S. at 574 (barring execution of individuals under 18 though traits of youth "do not disappear" by then and "some under 18" are as mature as adults, because "18 is the point where society draws the line for many purposes"); *e.g. Planned Parenthood v. Casey*, 505 U.S. 833, 869-70 (1992) (holding, "[l]iberty must not be extinguished for want of a

14

line that is clear," and drawing the line for abortion at viability because "there is no line . . . more workable.").

Furthermore, the government exaggerates the impact of this holding. There are only 38 juveniles sentenced to LWOP in the federal system, *see* Assoc. Press, "A State-by-State Look at Juvenile Life without Parole," Seattle Times (July 30, 2017), and—it bears remembering—the panel's holding applies only to the subset of this group who are determined capable of reform. Moreover, the panel reserved discretion for district courts to provide for release after retirement age when the section 3553(a) factors so counsel in "exceptional circumstances." *Grant*, 887 F.3d at 152. For these reasons, too, the panel's holding was not only entirely appropriate but, because it will have a modest impact, does not warrant rehearing.

## CONCLUSION

For the foregoing reasons, the government's petition for rehearing *en banc* should be denied.

Respectfully submitted,

/s/ Lawrence S. Lustberg
Lawrence S. Lustberg, Esq.
Avram D. Frey, Esq.

Dated:  September 6, 2018